# Babayan *v.* Reed et al., Appellants.

*Contracts—Contracts for hire—Rescission — Discharge — Damages—Measure of damages—Delay in payment—Mitigation · of damages—Evidence—Admissibility—Requests for charge.*

1. Where in an action for breach of a contract in discharging plaintiff from defendants' employ it appeared that plaintiff had owned a cigarette business, which he had sold to defendants, under a contract whereby plaintiff should be employed by defendants at a weekly salary for a period of years, and should receive in addition a percentage of the profits, and that two months thereafter defendants discharged plaintiff from their employ and excluded him from their place of business, although defendants contended that the contract had been rescinded by mutual consent, the case was properly submitted to the jury.

2. While it was competent for defendants to show in mitigation of

damages that plaintiff might by reasonable efforts have secured employment elsewhere in the same locality, it was not error to refuse to permit defendants to ask one of their witnesses, who had qualified as an expert in the tobacco business, to answer vague and indefinite questions as to whether or not an expert cigarette maker and vendor and buyer could command a big salary, whether such a person is in demand in the trade and whether such an expert has any difficulty in obtaining employment.

3. Where defendants contended that the contract had been rescinded by mutual consent, but the only evidence of such rescission was that after a dispute between plaintiff and defendants one of defendants said he would pay the plaintiff no more money and plaintiff thereupon told defendants that he would get an injunction and would prevent them from using his brand and would cancel the contract, and thereupon went out of the store stating that he was going to see his lawyer, such evidence of rescission was insufficient for submission to the jury, particularly where it appeared that plaintiff remained and worked thereafter and that defendants did not contend that such acts of plaintiff amounted to a rescission until the time of trial.

4. Where the contract was partly oral and partly written, the admission of plaintiff's testimony as to what he told defendants relative to his earnings and profits in his business before the contract was entered into, was not error but was admissible to show the negotiations leading up to the contract, and this was particularly true where defendants offered testimony along the same lines.

5. It was not error to instruct the jury that they might in their discretion give additional damages for delay in payment not exceeding six per cent. per annum from the date of the breach.

6. Where a plaintiff's claim consists of separate branches as to each of which the evidence is conflicting, a request by defendant for a general verdict in his favor in case the jury find the facts for him as to one branch of the case should be refused.

7. Where plaintiff made claim for a balance due him for merchandise, as to which part of the claim the evidence was conflicting, it was proper to refuse a point which requested the trial judge to charge the jury that if the jury found the plaintiff agreed with the defendants to cancel the contract plaintiff was not entitled to recover.

Argued Jan. 23, 1917. Appeal, No. 313, Jan. T., 1916, by defendants, from judgment of C. P. No. 1, Philadelphia Co., June T., 1913, No. 4756, on verdict for plaintiff, in case of Madirios Babayan v. John C. Reed, Charles

E. Starr and Heverin S. Reed.  Before BROWN, C. J.,
POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Assumpsit for breach of a contract.  Before BREGY,
P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,625 and judgment thereon.
Defendants appealed.

*Errors assigned* were rulings on evidence, answers to
points and instructions to the jury.

*Maurice Bower Saul,* with him *Frank P. Prichard* and
*John G. Johnson,* for appellants.—It was error to refuse
to permit the examination of one of defendants' witnesses as to the salary of an expert cigarette blender,
whether cigarette blenders are in demand in the trade,
and whether they have any difficulty in securing positions: Emery v. Steckel, 126 Pa. 171.

The affirmance of the plaintiff's points in effect instructed the jury that they should find, not the value of
the contract, but the amount of wages due under the contract, with interest on installments prior to the date of
the trial; this was not the proper measure of damages:
Roserie v. Kiralfy Bros., 12 Philadelphia 209; Rightmire v. Hirner, 188 Pa. 325; Nixon v. Myers, 141 Pa.
477; Richards v. Citizens Gas Co., 130 Pa. 37; Crawford
v. Mail & Express Publishing Co., 47 N. Y. Supp. 747.

It was error to admit evidence of conversations between the plaintiff and the defendants as to the amount
of profits made by the plaintiff prior to his entering into
the contract with the defendants.

*Paul Reilly,* for appellee.—The plaintiff was properly
permitted to recover the value of the contract of employment from the date of his discharge until its termination,
about four years and ten months: Wilke v. Harrison,

166 Pa. 202; Heyer v. Cunningham Piano Co., 6 Pa. Superior Ct. 504; Hoy v. Gronoble, 34 Pa. 9; Cutter v. Gillette, 163 Mass. 95 (39 N. E. Repr. 1010).

OPINION BY MR. JUSTICE WALLING, March 19, 1917:

This is an action for damages for an alleged breach of contract relating to the manufacture, etc., of cigarettes. In the early part of the year 1913, the plaintiff was engaged in a small way in the manufacture and sale of cigarettes, his place of business being on Fifty-second street, Philadelphia. In the course of his business plaintiff became acquainted with defendants, who were engaged, inter alia, in the banking business in said city. Plaintiff seems to have had quite an extended experience in the tobacco and cigarette business, but was without capital to enlarge the same. His acquaintance with defendants soon became one of mutual confidence, as a result of which they agreed in substance to take over and finance the cigarette business and to purchase at least a part of plaintiff's property and effects connected therewith, including the trade name or brand "Deran," and pay him for such property; also to pay plaintiff for five years a weekly salary of $50; and, in case he devoted his entire time to the business, then the further sum of fifteen per cent. of the net profits. The business was to be conducted in plaintiff's name but to belong solely to defendants, and he was not to use their credit or make any purchase without their written authority. The contract, so far as reduced to writing, was executed by the parties May 6, 1913; however, some parts thereof remained in parol. Pursuant to this arrangement a factory and place of business were established and opened at 1028 Chestnut street, Philadelphia; to which place plaintiff removed his business and had his internal revenue license transferred. In the establishment of the new business, including the purchase of new machinery, etc., and a large amount of tobacco, defendants expended about $24,000. They knew nothing about the cigarette business or the

purchase of tobacco therefor, except plaintiff's word and the sampling of his cigarettes. In the agreement, drawn by one of the defendants and signed by all the parties, plaintiff is represented as honest and an expert cigarette blender and maker and tobacco buyer.

The business seemed to develop unfavorably and friction soon arose between the parties, and defendants became dissatisfied to such an extent that on July 8, 1913, they wrote plaintiff a letter declaring the contract cancelled and at an end, because of certain alleged violations thereof by plaintiff; and same day, on his declining to surrender to them his key, changed the locks on the door of their said place of business and excluded plaintiff therefrom. He was paid by them $50 a week from May 3, to July 12, 1913, and also $610 on account of the property. Later plaintiff brought this suit wherein he claimed $757.91, as balance for merchandise, also claimed $2,000 for his trade name "Deran," and large amounts for loss of earnings and profits, resulting from defendants' alleged breach of contract. The defendants denied plaintiff's allegations, and set up a counterclaim for a large amount for alleged breaches of contract by plaintiff, all of which were denied by him. The case was stubbornly contested and turned largely on questions of fact which were submitted to the jury, who gave plaintiff a verdict for $3,625. Defendants abandoned their motion for a new trial, and on this appeal assigned as errors certain portions of the charge of the learned trial judge, and also rulings on offers of evidence.

Defendants asked of one of their witnesses, who had qualified as an expert in the business, the following questions:

Q.—Does an expert cigarette maker and blender and buyer command a big salary?

Q.—Is an expert cigarette maker, blender and buyer in demand in the trade?

Q.—Has such an expert any difficulty in obtaining employment?

To each a general objection was made, which was sustained by the court. No offer was made and no reason given for the objections. It was competent for defendants to show in mitigation of damages that plaintiff might by reasonable effort have secured employment elsewhere in the same locality: Emery v. Steckel, 126 Pa. 171. But the above questions are bad in form and indefinite in substance, especially so as to time, place and amount; and we cannot say that their exclusion was error.

The jury found that plaintiff had not broken his contract, and therefore whether defendants got a trade name for their cigarettes was immaterial. The question embraced in the sixth assignment of error assumes that plaintiff terminated his contract by leaving defendant's employ, a statement neither conceded by him nor found by the jury, hence its exclusion was justified; and, in view of the verdict, the amount defendants expended after plaintiff ceased to be in their employ was immaterial.

The allegation that the contract was cancelled by reason of a certain conversation had about June 25, 1913, between plaintiff and defendant Starr, cannot be sustained under the facts of the case. Mr. Starr's testimony as to that is:

"Q.—Repeat again what took place? A.—He was very angry because I would not pay him any money, and he told us unless we paid him this money he would get an injunction and prevent us from using the brand and he would cancel the contract. I told him that was satisfactory to me. He said then he was going out to see his lawyer, and he started out the door and went down the steps, and that is the last I saw of him that day."

But that did not terminate the contract, especially in view of the fact that plaintiff kept at work until July 8th, and that no such claim is set up in the letter of that date, or in the pleadings.

We cannot say that the admission of plaintiff's testimony as to what he told defendants as to his earnings and profits in his Fifty-second street business, was error. It was part of the negotiations leading up to the contract and defendants offered testimony along the same line; and besides neither party claims that the entire contract was ever reduced to writing, and the court did not submit to the jury plaintiff's claim for loss of profits either in the old or new business.

Plaintiff's suit was for breach of contract, and his damage was the loss he sustained thereby; nevertheless, the amount of his weekly salary under the contract was a matter for the jury to consider in arriving at the damages. Plaintiff was entitled to his damages if at all as of the date of the breach; and it was not error to instruct the jury that they might in their discretion give additional damages for delay, not exceeding six per cent. per annum.

Defendants' second request was in effect that plaintiff could not recover if the jury found that on his demand defendants tendered him a return of the brand "Deran." And their third request was:

"If the jury find that the plaintiff agreed with the defendants to cancel the contract, the plaintiff is not entitled to recover."

Both of these requests were properly declined, as they ignore plaintiff's claim of a balance due him for the merchandise, and as to that the evidence was conflicting. Where a plaintiff's claim consists of separate branches, as to each of which the evidence is conflicting, a request by defendant for a general verdict in his favor, in case the jury find the facts for him as to one branch of the case, cannot be granted. And, as above stated, the evidence would not sustain a finding that the contract in question had been cancelled by agreement of the parties. We find no reversible error in the record.

The judgment is affirmed.