STEELCASE, INC., Plaintiff v. THE LILLY COMPANY, INC., Defendant

No. 8828SC547

(Filed 16 May 1989)

### 1. Sales § 22— defective wood stain—failure to use according to instructions—Products Liability Act not applicable

Plaintiff's breach of contract claim did not fall within the purview or effect of the Products Liability Act, to which a defense of contributory negligence would be applicable, where plaintiff was able to convince a trier of fact that it suffered damages flowing from a failure to meet direct and express contractual obligations. N.C.G.S. § 99B-4(1) (1985).

### 2. Evidence § 29.2— damages—business records—admissible

The trial court erred in an action for damages arising from defective wood stain furnished to plaintiff by defendant in excluding certain business records where the records in each case were made in the usual course of plaintiff's business and were made contemporaneously with the occurrences of situations involving the damaged furniture; the records were compiled by persons authorized to make them; and in each case the evidence was identified through the testimony of a witness familiar with the business entries in the system under which they were made and who could have also authenticated the records. N.C.G.S. § 8C-1, Rule 803(6).

### 3. Judgments § 55— prejudgment interest—breach of contract —allowable

The trial court erred in an action for breach of contract in the furnishing of wood stains by not allowing prejudgment interest from the date of the breach, even though the action was pending at the time the 1985 amendment of N.C.G.S. § 24-5 became effective and was therefore not governed by its current provisions, because the amount of damages to which plaintiff was entitled could be determined by examining evidence relevant to the contract such as the business records or documentation concerning the damaged furniture.

APPEAL by plaintiff and defendant from *Lewis, Robert D., Judge*. Judgment entered 23 December 1987 in BUNCOMBE County Superior Court. Heard in the Court of Appeals 8 December 1988.

Plaintiff Steelcase operates a facility in Henderson County, North Carolina, manufacturing office furniture. Defendant Lilly Company is engaged in the business of manufacturing and selling finishes and stain for use in the furniture industry.

Plaintiff uses wood stains in the production of wood furniture. Prior to 1981, plaintiff had used wood stains supplied to it by Sherwin-Williams Company. In the spring of 1980, plaintiff began negotiations with defendant for defendant to supply the wood stains, on the basis that defendant could reproduce the Sherwin-Williams stains. In January of 1981, plaintiff began purchasing and using stains produced by defendant. The stain was applied to the furniture which was then passed through plaintiff's drying ovens.

Later in 1981, plaintiff began receiving complaints from customers concerning a discoloration or "whitening" of walnut furniture purchased from plaintiff. Plaintiff also noted that furniture stored in its warehouse exhibited the same discoloration or whitening effect. Plaintiff and defendant initially worked in cooperation to repair the damaged furniture by applying a methylpyrol compound. These efforts proved unsatisfactory.

The whitening effect was eventually determined by an independent testing agency acting on behalf of plaintiff to be the result of incomplete drying of the furniture stain. In November 1981, defendant reformulated the walnut oil stain.

In a complaint against defendant in February 1985, plaintiff asserted six separate claims for relief: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) negligence of defendant; and (6) unfair and deceptive trade practice.

Defendant answered, denying the allegations of the complaint and raising as defenses failure to state a claim upon which relief can be granted, failure to commence the action within the time allowed by the statute of limitations, contributory negligence and limitation of remedies.

On 14 December 1987 defendant was allowed to amend its answer to include a defense of failure to use the product in accordance with express adequate instruction delivered with the product to plaintiff.

STEELCASE, INC. v. THE LILLY CO.

[93 N.C. App. 697 (1989)]

The case was tried before a jury at the 7 December 1987 session of Buncombe County Superior Court. At the end of the trial, issues were submitted to the jury concerning the contract, implied warranty and damages. These issues submitted and answered by the jury were as follows:

## I — THE CONTRACT

1. Did the contract include an agreement that Lilly would reproduce a walnut finish materially similar in working properties to the Sherwin-Williams finish?

Answer: Yes

2. Did Lilly breach the contract by failing to supply a walnut finish materially similar in working properties to the Sherwin-Williams finish?

Answer: Yes

3. Did that breach of contract cause Steelcase to incur more than nominal damages?

Answer: Yes

## II — IMPLIED WARRANTY

1. Did Lilly impliedly warrant to Steelcase that the walnut finish was fit for Steelcase's particular purpose?

Answer: Yes

2. Was the implied warranty of fitness for a particular purpose breached by Lilly?

Answer: Yes

3. Did Steelcase use the walnut finish contrary to expressed and adequate instructions which Steelcase knew or should have known in the exercise of reasonable and diligent care by reason of the letter of March 9, 1981 from Lilly to Steelcase?

Answer: Yes

4. Did that breach of warranty cause Steelcase to incur more than nominal damages?

Answer: _____

STEELCASE, INC. v. THE LILLY CO.

[93 N.C. App. 697 (1989)]

### III—DAMAGES

    1. Is Steelcase limited in their recovery to replacement of the industrial coating without charge or to refund the purchase price paid?

    Answer: No

    2. What amount is Steelcase entitled to recover?

    Answer: $250,000.00

    On 16 December 1987, defendant made a motion for judgment notwithstanding the verdict. This motion was denied on 21 December 1987. Judgment was entered on the verdict on 23 December 1987. Both parties appealed.

    *Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Philip J. Smith and Michelle Rippon, for plaintiff.*

    *Morris, Phillips and Cloninger, by William C. Morris, Jr., for defendant.*

    WELLS, Judge.

### Defendant's Appeal

[1] Without making reference to any exception or assignment of error, defendant presents an argument contending that this case is "a products liability action" and that under applicable provisions of the Products Liability Act, N.C. Gen. Stat. § 99B-4, the jury's answer to issue number 3 under the implied warranty claim defeats plaintiff's claim and entitles defendant to judgment in its favor as a matter of law. The pertinent portions of the statute provide:

    G.S. § 99B-4. *Injured parties' knowledge or reasonable care.* No manufacturer or seller shall be held liable in any product liability action if:

    (1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings. . . .

G.S. § 99B-4(1) (1985).

Defendant's argument has merit as it applies to plaintiff's implied warranty claim, as the jury found, in effect, that plaintiff's contributory negligence in its use of defendant's product defeated plaintiff's entitlement to damages *under that claim.*

We hold, however, that plaintiff's breach of contract claim does not fall within the purview or effect of the Products Liability Act. Claims under that act are rooted in negligence, to which a defense of contributory negligence would obviously be applicable. Where, as in this case, a plaintiff is able to convince a trier of fact that it has suffered damages flowing from the failure of a defendant to meet direct and express contractual obligations, the defense of contributory negligence has no application to that claim.

Our review of the record and briefs reveals a long and complicated jury trial involving extensive and contradictory testimony and evidence as to the cause of the damage to plaintiff's furniture and plaintiff's resulting monetary losses. Plaintiff offered evidence tending to show that defendant had originally formulated a defective stain containing too much linseed oil, a stain not duplicative of the Sherwin-Williams stain plaintiff had contracted for, and that this breach of contract caused plaintiff's damages and losses. Defendant offered evidence tending to show that if plaintiff had used defendant's stain in accordance with instructions furnished by defendant, plaintiff's furniture would not have been damaged by the use of defendant's stain.

The verdict indicates that the jury sifted through this evidence and found that defendant did breach its contract with plaintiff and that this breach caused plaintiff's damages. Defendant does not contend or question that the evidence did not support this part of the jury's verdict.

As to defendant's appeal, we find no error in the trial.

### Plaintiff's Appeal

[2] Plaintiff assigns error to the trial court's ruling that certain evidence pertaining to plaintiff's damages constituted hearsay and was therefore inadmissible. Plaintiff argues that this evidence should have been admitted because it is covered by the business records exception to the hearsay rule. The types of business records covered in the business records exception and its prerequisites are codified at N.C. Gen. Stat. § 8C-1, Rule 803(6) (1988) of the Rules of Evidence, as follows:

STEELCASE, INC. v. THE LILLY CO.

[93 N.C. App. 697 (1989)]

(6) *Records of Regularly Conducted Activity.* — A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

In construing Rule 803(6), this Court has stated, "Records made in the usual course of business, made contemporaneously with the occurrences, acts and events, recorded by one authorized to make them and before litigation has arisen, are admissible upon proper identification and authentication." *State v. Miller*, 80 N.C. App. 425, 342 S.E. 2d 553, *disc. rev. denied and appeal dismissed*, 317 N.C. 711, 347 S.E. 2d 448 (1986). We went on to state in *Miller* that:

Authentication of records of regularly conducted activity is 'by the testimony of the custodian or *other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.' Rule 803(6) N.C. Rules Evid. (emphasis added.) 'Other qualified witness' has been construed to mean a witness who is familiar with the business entries and the system under which they are made.

*Id.* at 429, 342 S.E. 2d at 556. (Emphasis in original.)

In the present case the business records at issue involve evidence of plaintiff's damages as a result of the whitened walnut furniture. These records are illustrative of the following: (1) miscellaneous out-of-pocket expenses; (2) no charge replacements to dealers; (3) additional credit to dealers; and (4) evidence concerning expenses for field trips made by plaintiff in an effort to repair the damaged furniture. The records involved in categories 1-3 above were compiled by the plaintiff's billing adjustments group, which handled product-related problems. Plaintiff's manager of general financial accounting services, Wayne Postma, was responsible for this billing adjustments group. Records involved in category 4 were

STEELCASE, INC. v. THE LILLY CO.

[93 N.C. App. 697 (1989)]

compiled by the office of plaintiff's division controller for its Fletcher, North Carolina plant. In each case the records were made in the usual course of plaintiff's business and were made contemporaneously with the occurrences of situations involving the damaged furniture. The records were compiled by persons authorized to make them—either the plaintiff's billing adjustments group or the office of plaintiff's division controller for the Fletcher, North Carolina plant. In each case the evidence was identified through the testimony of a witness familiar with the business entries and the system under which they were made and who could have also authenticated the records. As such, we find that the records at issue in the present case are the kind of records intended to be covered by the business records exception to the hearsay rule. The trial court's ruling that this evidence was inadmissible was in error.

**[3]** Plaintiff also argues that the trial court erred in failing to award plaintiff prejudgment interest calculated from the date of breach on the judgment award of $250,000. Though N.C. Gen. Stat. § 24-5 clearly provides for interest to be calculated from the date of breach in breach of contract actions, the present case is not governed by the 1985 amendment of G.S. § 24-5 providing for such interest. Chapter 214 of the 1985 Session Laws of North Carolina, which rewrote G.S. § 24-5 to provide for interest from the date of breach states at Section 2: "This act shall become effective October 1, 1985. This act shall not affect pending litigation and shall not affect the law as it existed before the enactment of Chapter 327 of the 1981 Session Laws." The present action was begun on 29 February 1985. Judgment was entered on 23 December 1987. Therefore, the present case was pending at the time the act became effective and is not governed by the current provisions of G.S. § 24-5.

In breach of contract cases decided prior to the 1985 amendment of G.S. § 24-5 interest was allowed from the date of breach under certain circumstances. "The rule in such cases is that when recovery is had for breach of contract and the amount of the recovery is ascertained from the contract itself or *from other relevant evidence*, interest should be added to the recovery from the date of breach." *Wilkes Computer Services v. Aetna Casualty & Surety Co.*, 59 N.C. App. 26, 295 S.E. 2d 776, *disc. rev. denied*, 307 N.C. 473, 299 S.E. 2d 229 (1983). (Emphasis added.) In the present case the plaintiff has been determined by the jury to be entitled to recover damages from the defendant for breach of con-

tract. The amount of the damages to which the plaintiff is entitled can be determined by examining evidence relevant to the contract such as the business records or documentation concerning the damaged furniture. Therefore, we hold that plaintiff is entitled to prejudgment interest calculated from the date of breach.

As to defendant's appeal, no error.

As to plaintiff's appeal, the case must be remanded for a new trial as to damages consistent with this opinion, and for an appropriate award of interest.

No error in part; new trial and remanded in part.

Judges BECTON and JOHNSON concur.