KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES

[125 N.C. App. 261 (1997)]

LEWIS KURTZMAN, Plaintiff v. APPLIED ANALYTICAL INDUSTRIES, INC.,
Defendant

No. COA96-50

(Filed 4 February 1997)

### 1. Labor and Employment § 65 (NCI4th)— employment at will—additional consideration exception—sufficient evidence

The "additional consideration" exception to the employment-at-will doctrine was applicable in plaintiff's action for breach of an employment contract where plaintiff's evidence tended to show that plaintiff, who had a secure position with another company, was actively recruited by defendant employer and was persuaded to sell his home in New England and relocate to North Carolina; negotiations between plaintiff and defendant were extensive; and plaintiff was told by defendant's top management that the job was a career position with tremendous long-term growth potential for him, that he had a job as long as he did his job, that plaintiff would be part of a team making valuable contributions toward the future growth of defendant, and that plaintiff's job was a secure position in which plaintiff could not lose and for which the long-term gain would outweigh the short-term losses. Plaintiff's recovery was not barred because an employment application which he signed eight days after beginning work for defendant contained language that "employment can be terminated for any reason" where plaintiff was not asked to complete an employment application before he began working for defendant; plaintiff did not consider the language applicable to him because of the numerous assurances he had received from defendant's top management; and, at the time he signed the application, plaintiff had already resigned his former position and had temporarily relocated in this state while his wife attempted to sell their home in New England.

**Am Jur 2d, Employment Relationship §§ 10 et seq.**

### 2. Labor and Employment § 72 (NCI4th)— breach of contract—damages—future income—sufficient evidence

Evidence of plaintiff's future income was not too speculative to support the jury's award of $350,000 to plaintiff for defendant employer's breach of an employment contract where plaintiff tes-

tified he was a capable employee who planned to work until retirement; plaintiff offered proof of his age and salary at the time of his termination by defendant; plaintiff presented evidence showing the efforts he made to find other employment and the wages he was able to earn upon termination by defendant; and expert testimony was offered to illustrate plaintiff's past and future losses.

**Am Jur 2d, Employment Relationship §§ 52 et seq.**

**Elements and meansure of damages in action by school-teacher for wrongful discharge. 22 ALR3d 1047.**

**Damages recoverable for wrongful discharge of at-will employee. 44 ALR4th 1131.**

**3. Judgments § 652 (NCI4th)— breach of contract—prejudgment interest**

Plaintiff was entitled to prejudgment interest from the date of defendant employer's breach of his employment contract. N.C.G.S. § 24-5(a).

**Am Jur 2d, Employment Relationship §§ 10 et seq.**

Appeal by defendant and cross appeal by plaintiff from judgments and orders entered by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court.

Defendant appeals from (1) the judgment and amended judgment entered 26 June 1995 and 3 August 1995 respectively; (2) the 4 August 1995 order denying defendant's motion to set aside verdict and judgment and alternative motion for new trial; and (3) all other orders and rulings adverse to defendant by the trial court during the trial and post-trial motion phases of the litigation. Cross appeal by plaintiff is from the Superior Court's 3 August 1995 amended judgment denying prejudgment interest.

Heard in the Court of Appeals 26 September 1996.

*Shipman & Umbaugh, L.L.P., by Gary K. Shipman, Jennifer L. Umbaugh and Carl W. Hodges, II, for plaintiff-appellee/ appellant.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester and Frank H. Lancaster, for defendant-appellant/appellee.*

**KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES**

[125 N.C. App. 261 (1997)]

McGEE, Judge.

This is an employment contract dispute in which plaintiff, Lewis Kurtzman, brought several claims against defendant, Applied Analytical Industries, Inc. (AAI) including his claim for breach of employment contract. AAI is a company based in Wilmington, North Carolina that provides scientific services to assist clients in securing FDA approval of pharmaceutical products. Although there was conflicting testimony at trial, there was evidence of the following employment arrangement between plaintiff and defendant. In late 1991, AAI contacted plaintiff about leaving his position as national sales manager of E.M. Separations Technology, a Rhode Island company. After some initial reluctance and extensive negotiations which included job security assurances from AAI, plaintiff accepted a position as director of sales for AAI with a minimum yearly salary of $125,000.

Plaintiff found temporary housing in Wilmington and began his employment with AAI on 30 March 1992. A few months later, he and his wife sold their home in Massachusetts and made a permanent move to Wilmington. Eight days after beginning his employment with AAI, plaintiff was asked to complete an employment application which included language that employees could be terminated for any reason deemed sufficient by AAI. Plaintiff signed the application, but considered it a simple formality since he had (1) already engaged in extensive negotiations which included assurances as to job security; (2) already accepted a position with AAI; (3) resigned from his employment with E.M. Separations Technology; and (4) relocated from Massachusetts to Wilmington.

On 2 November 1992, AAI terminated plaintiff. Despite extensive efforts, plaintiff was unable to secure different employment, so he started a consulting business which paid substantially less than the salary he received while working at AAI. On 2 February 1993, plaintiff filed suit against AAI alleging breach of employment contract, tortious interference with contractual relations, intentional infliction of emotional distress and by amendment, negligent misrepresentation. All claims except the breach of contract action were dismissed either voluntarily or by summary judgment. The remaining claim for breach of contract proceeded to a jury trial. On 1 June 1995, the jury returned a verdict in plaintiff's favor and awarded him $350,000.00 in damages.

The trial court entered judgment on the jury verdict on 26 June 1995 and subsequently amended judgment on 3 August 1995 to

include an award of post-judgment interest. AAI moved the trial court to set aside the verdict or, in the alternative, for a new trial. These motions were denied. Both plaintiff and AAI have appealed to this Court. AAI contends the trial court erred (1) in denying its motion for directed verdict and (2) in allowing the $350,000.00 award to stand because it is too speculative. Plaintiff has appealed the trial court's denial of prejudgment interest from the date of the breach of contract.

## I.  Denial of the Directed Verdict

[1] The question this Court must consider with a motion for directed verdict is whether the evidence was sufficient to entitle plaintiff to have a jury pass on the matter. *Smith v. Price*, 74 N.C. App. 413, 418, 328 S.E.2d 811, 815 (1985), *aff'd in part and rev'd in part on other grounds*, 315 N.C. 523, 340 S.E.2d 408 (1986). The evidence is to be reviewed in a light most favorable to the non-moving party and the non-movant is entitled to every inference which may legitimately be drawn from the evidence. *Id.* All conflicts are resolved in favor of the non-movant. *Id.*

In arguing the trial court erred in denying its motion for directed verdict, AAI contends North Carolina is an employment-at-will state with relatively few exceptions. AAI argues plaintiff's heavy reliance on *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985) as allowing an exception to employment-at-will in cases where the employee gives special consideration such as removing his residence from one place to another in order to accept employment is misguided and that under these facts, *Sides* is inapplicable. AAI contends this Court's holding in *Sides* is narrow and creates an exception to employment-at-will for public policy reasons in cases where the employee is asked to engage in unlawful behavior. Furthermore, AAI argues any reference in *Sides* to "removal of residence" is dicta and not part of the Court's holding. AAI urges "the 'removal of residence' concept would be an unsound basis on which to base an exception to the principle of employment-at-will [and] further, such an exception would be contrary to precedent." We disagree.

North Carolina is an employment-at-will state. An employee who is not offered employment for a definite term is considered "an employee at will and may be discharged without reason." *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). This rule is subject to several exceptions including an "addi-

tional consideration" exception. *Mortensen v. Magneti Marelli U.S.A.*, 122 N.C. App. 486, 488, 470 S.E.2d 354, 356, *disc. review denied*, 344 N.C. 438, 476 S.E.2d 120 (1996). In *Mortensen* we said:

> The providing of additional consideration by the employee does not convert every employment-at-will agreement into an enforceable contract. If, however, the employment agreement expressly or impliedly provides that the employment will be permanent, for life or terminable only for cause *and* the employee gives an independent valuable consideration other than his services for the position, *see Sides v. Duke University*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828, *disc. rev. denied*, 314 N.C. 331, 335 S.E.2d 13 (1985); *Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 658-59, 412 S.E.2d 97, 101 (1991), *cert. denied*, 331 N.C. 119, 415 S.E.2d 200 (1992); *Tuttle v. Lumber Co.*, 263 N.C. 216, 219, 139 S.E.2d 249, 251 (1964); John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 2-9 at 60-63 (3d ed. 1987); *see also* 30 C.J.S. *Employer-Employee* § 43, at 83 (1992), the employment can be terminated only for cause until the passage of a reasonable time. *See* 3A Arthur L. Corbin, *Corbin on Contracts* § 684 (1960 & Supp. 1994); *Tuttle*, 263 N.C. at 219, 139 S.E.2d at 251; 30 C.J.S. *Employer-Employee* § 43, at 83 (1992). After the passage of a reasonable time the employment relationship can be terminated without cause.

*Id.* at 488-89, 470 S.E.2d at 356. This Court has recognized that additional consideration can include the removal of an employee's residence from one location to another in order to accept employment. *See Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 659, 412 S.E.2d 97, 101 (1991), *cert. denied*, 331 N.C. 119, 415 S.E.2d 200 (1992); *Sides*, 74 N.C. App. at 345, 328 S.E.2d at 828; *Burkhimer v. Gealy*, 39 N.C. App. 450, 454, 250 S.E.2d 678, 682, *disc. review denied*, 297 N.C. 298, 254 S.E.2d 918 (1979).

In this case, there was evidence that plaintiff, who had a secure position with another company, was actively recruited by AAI and eventually was persuaded to relocate from New England to North Carolina to accept the sales director position with AAI. Negotiations between plaintiff and AAI were extensive and plaintiff testified he received numerous verbal assurances of job security from top management at AAI. Plaintiff was told the job was a career position with tremendous, long-term growth potential for him and that "[a]s long as I did my job, I had a job." Other assurances included almost a dozen

statements that plaintiff would be part of a team making valuable contributions toward the future growth of AAI; it was a secure position in which plaintiff could not lose and that the long-term gains would outweigh any short-term losses. Plaintiff was told the company was prepared to pay temporary living expenses and the company contributed to the costs of selling plaintiff's Massachusetts residence. We agree with plaintiff that collectively, these statements constitute specific assurances that plaintiff would not be discharged unless his performance was inadequate.

AAI's argument that plaintiff's recovery is barred because the employment application which he signed eight days after beginning work for AAI contained language that "employment can be terminated for any reason deemed sufficient by AAI" is without merit. Plaintiff testified he never saw the employment application prior to beginning work for AAI and that when he was asked to sign the form eight days after he became employed, he did not consider the language applicable to him because of the numerous assurances he had already received from top management at AAI. Additionally, by the time plaintiff signed the application, he had already resigned from E.M. Separations and temporarily relocated to Wilmington while his wife was trying to sell their home in New England. Furthermore, AAI's Director of Personnel testified that during his interviews with plaintiff, he never asked him to complete a job application. He explained that management employees generally used resumes as the method of conveying their prior work experience and employment applications for these people were typically completed after employment and were kept on file for personnel record purposes.

## II. Damage Award

**[2]** AAI contends the jury's award of $350,000.00 cannot stand because the calculation of damages was too speculative as to plaintiff's future income. We disagree.

In calculating the damages for this breach of contract claim, plaintiff was entitled to recover the difference between his salary as opposed to his total earnings during the contract period. *Thomas v. College*, 248 N.C. 609, 615, 104 S.E.2d 175, 179 (1958). Plaintiff presented solid evidence of the damages he suffered as a result of this breach of contract. He testified he was a capable employee who planned to work until retirement. He offered proof of his age and his salary at the time of his termination. Other evidence was introduced showing the efforts plaintiff made to find different employment and

the wages he was able to earn upon termination by AAI. Finally, expert testimony was offered to illustrate plaintiff's past and future losses.

As plaintiff noted in his brief, a determination of damages in this case is no more speculative than is an award for loss of future earnings in a personal injury claim. We conclude there was sufficient concrete evidence upon which the jury could calculate plaintiff's damages with a reasonable degree of certainty.

### III. Prejudgment Interest

[3] In plaintiff's cross appeal, he argues the trial court erred in denying his petition for prejudgment interest from the date of AAI's breach of contract. We agree.

In *Metromont Material Corp. v. R.B.R. & S.T.*, 120 N.C. App. 616, 463 S.E.2d 305 (1995), *disc. review denied*, 342 N.C. 895, 467 S.E.2d 903 (1996), we said:

> The legislature amended G.S. § 24-5(a) in 1985 to provide that "[i]n an action for breach of contract, . . . the amount awarded on the contract bears interest from the date of the breach." Subsequently, in *Steelcase, Incorporated v. The Lilly Company*, this Court noted that, as amended, G.S. § 24-5(a) "clearly provides for interest from the date of breach in breach of contract actions." *Steelcase, Inc. v. The Lilly Co.*, 93 N.C. App. 697, 703, 379 S.E.2d 40, 44, *disc. review denied*, 325 N.C. 276, 384 S.E.2d 530 (1989).
>
> Here, both parties tailor their arguments to the case law developed prior to the 1985 amendment and the rule quoted from *General Metals*. However, it is clear to this Court that resort to that rule, developed only to determine the date from which to apply interest, is no longer necessary. When the legislature amended the statute, and provided a time from which to apply interest, it obviated any need for the rule. In doing so, it removed the confusing questions of ascertainment and certainty that so often muddled the statute's application. Because this case falls under the amended version of the statute, plaintiff's arguments do not apply, and the trial court did not err in awarding prejudgment interest.

*Id.* at 618, 463 S.E.2d at 307. Our holding in *Metromont* is clearly dispositive of this case. To the extent the trial court's judgment is incon-

sistent with N.C. Gen. Stat. § 24-5(a), which states that interest shall be paid from the date of breach in breach of contract actions, we reverse and remand the matter for entry of judgment including prejudgment interest.

Affirmed in part, reversed in part and remanded.

Judges WYNN and JOHN concur.